UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
R.I.A. MELBOURNE LIMITED : CASE NO. 1:08-cv-01012
PARTNERSHIP, :
:
Plaintiff, : JUDGE JAMES S. GWIN
:
vs. : OPINION AND ORDER
: [Resolving Doc. 3.]
FORMAN CAPITAL, LLC, *et al.* :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Opinion and Order, the Court addresses the Defendants' motion to dismiss the case for lack of personal jurisdiction or in the alternative, to transfer venue. [Doc. 3, 22.] The Plaintiff opposes both the motion to dismiss and to transfer venue. [Doc. 13.]

For the reasons described below, the Court **GRANTS** the Defendants' motion to dismiss for lack of personal jurisdiction. Because the Court finds that it lacks personal jurisdiction over the Defendants, the Court will not address the Defendants' alternative motion to transfer venue.

**I. Background**

As described below, the Court construes the factual allegations in favor of the Plaintiff for the purposes of this analysis. *See Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (citations omitted).

Plaintiff R.I.A. Melbourne Limited Partnership ("R.I.A.") is an Ohio limited partnership with its principal place of business in Beachwood, Ohio. [Doc. 1-3 at 3.] The Plaintiff owned the Crossroads Plaza Shopping Center ("the Shopping Center"), that is further described below, until October 2006. Id.

Defendant Triple F Funding, LLC, which subsequently changed its name to Forman Capital, LLC, is a Florida limited liability company with its principal place of business in Florida. Id. Defendant Brett D. Forman ("Forman"), who resides in Florida, was or is the Managing Member of Triple F Funding, LLC, and Forman Capital, LLC. Id. The Defendants represented to the Plaintiff that they are in the business of refinancing commercial properties. Id. at 4.

This dispute arises out of the Plaintiff's attempt to refinance its mortgage involving the Shopping Center. Id. The Shopping Center is located at 1553-1575 Palm Bay Road, Melbourne, Florida 32905. Id. at 3. At all times relevant to this lawsuit, the Plaintiff faced bankruptcy proceedings in Ohio and foreclosure proceedings in Florida involving the Shopping Center. [Doc. 1-3 at 35-37.] On or around April 2006, the Plaintiff began discussions with the Defendants to refinance the existing mortgage on the Shopping Center. Id. at 3-4. Plaintiff R.I.A. hoped that the refinancing would help R.I.A. emerge from bankruptcy and halt pending foreclosure proceedings involving the Shopping Center. Id. at 4.

The parties' discussions about refinancing led to the Defendants sending two "Conditional Commitment" letters to the Plaintiff in Ohio, one on July 5, 2006 and a revised version for the purposes of the bankruptcy proceeding on July 17, 2006. [Docs. 13-3, 13-4.] The letters outlined the terms of the alleged loan agreement ("the Commitment") between the parties. [Docs. 13-3, 13-4.] Most significantly, the parties contemplated the Defendants loaning the Plaintiff $8 million. [Docs. 13-3, 13-4.] The Plaintiff and the Ohio Bankruptcy Trustee, Lauren A. Helbling, signed the

Commitments in Ohio.[1] [Docs. 13-3, 13-4.] The Plaintiff says that the "Defendants repeatedly represented to R.I.A. Melbourne that they would close the loan upon the execution of the Commitment and the satisfaction of the conditions precedent, including the payment of certain fees, expenses, and Bankruptcy Court approval." [Doc. 1-3 at 4.]

On July 25, 2006, Defendant Forman attended the Plaintiff's bankruptcy hearing where the Plaintiff sought the Bankruptcy Court's authorization to reimpose the stay to prevent the upcoming foreclosure sale of the Shopping Center and to proceed with the refinancing of the mortgage to redeem the property. [Docs. 13-2 at 4, 1-3 at 33.] The Plaintiff represented to the Bankruptcy Court that it had obtained a "commitment for a loan" with the Defendants that likely "can be closed within a matter of days." [Doc. 1-3 at 37.] Even though Defendant Forman was allegedly available to testify at the hearing regarding the loan agreement between the parties, he did not testify or enter an appearance at the hearing. [Doc. 3-3 at 4.] On July 26, 2006, the Bankruptcy Court reimposed the stay and authorized the parties to enter into the Commitment. [Doc. 13-6.]

Also in July and August 2006, the Plaintiff wired funds from its Ohio bank accounts to the Defendants per their request to continue their due diligence efforts. [Doc. 13-2 at 20, 32, 34, 39, 42, 45, 55.] The Plaintiff says that it provided the funds relying on the Defendants' representations that the loan would proceed following such payments. [Doc. 1-3 at 5.]

Following these transfers of funds, the Plaintiff alleges that it "repeatedly called Defendants to determine the closing date of the Loan, but Defendants did not respond to any telephone calls." [Doc. 1-3 at 6.] On August 11, 2006, the Defendants sent the Plaintiff a letter stating that they "elected not to proceed with the requested financing." [Doc. 13-7.] The Plaintiff says that it has

---

[1] The copies of the Commitments provided to the Court indicate that the Plaintiff signed the July 5, 2006 version, but not the July 17, 2006 revision and that Helbling signed the July 17, 2006 revision, but not the July 5, 2006 version. *See* [Docs. 13-3, 13-4.]

satisfied all the conditions precedent to closing the loan agreement. [Doc. 1-3 at 5.]

The Plaintiff filed this lawsuit on March 13, 2008. [Doc. 1-1 at 2.] With its complaint, Plaintiff R.I.A. brings six counts: 1) breach of contract, 2) negligent misrepresentation, 3) fraud, 4) breach of covenant of good faith and fair dealing, 5) promissory estoppel and 6) conversion. [Doc. 1-3 at 6-11.] The Defendants removed the case to federal court on April 18, 2008. [Doc. 1-1.] The Defendants answered the Plaintiff's complaint on May 12, 2008. [Doc. 10.]

The Defendants filed the instant motion on April 25, 2008. [Doc. 3-2.] First, the Defendants move the Court to dismiss the case for lack of personal jurisdiction. *Id.* In the alternative, the Defendants request that the Court transfer the case to the Southern District of Florida. *Id.* The Plaintiff opposed both arguments on May 23, 2008. [Doc. 13-1.] The Defendants replied to the Plaintiff's opposition on June 5, 2008. [Doc. 22.]

## II. Personal Jurisdiction

*A. Legal Standard*

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move a court to dismiss a case for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). In a diversity case, the law of the forum state dictates whether such jurisdiction exists. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 Fed.Appx. 425, 429 (6th Cir. 2006). In Ohio, a defendant's conduct must satisfy both Ohio's long-arm statute as well as the requirements of the Due Process Clause to permit a finding of personal jurisdiction over that defendant. *Id*.

The Ohio Supreme Court has stated that "the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). "Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's

long-arm statute, [the Sixth Circuit has] consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice.'" *Bird v. Parsons*, 289 F.3d 865, 871-72 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In this case, Plaintiff R.I.A. asserts jurisdiction under Ohio long-arm statute sections 2307.382(A)(1) and (A)(3).  The statute provides:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state; . . .
>
> (3) Causing tortious injury by an act or omission in this state; . . .
>
> (C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

O.R.C. § 2307.382.[2]

Due process requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).  "In analyzing the due-process limits of personal jurisdiction, a distinction is made between 'general' jurisdiction and 'specific' jurisdiction." *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989).  Here, the Plaintiff asserts specific jurisdiction.  A plaintiff

---

[2] The Sixth Circuit recently suggested that the analysis governing the (A)(1), "transacting any business," provision of Ohio's long-arm statute cited here is generally "coextensive with the Due Process clause" analysis. Burnshire, 198 Fed.Appx. at 432. ("Based on the identical standards used to interpret the 'transacting any business' standard and the 'purposeful availment' and 'substantial connection with the forum state' prongs of our *Southern Machines* test, we now expressly adopt *Brunner's* suggestion that 'transacting any business' is coextensive with the Due Process clause.")
  The Court need not determine whether to collapse the Ohio long-arm statutory and federal constitutional analyses into one here because it finds that the Plaintiff fails to allege sufficient contacts to support a finding of jurisdiction under the constitutional analysis as described below.

may demonstrate specific jurisdiction by satisfying the three-part test established in the Sixth Circuit:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). *See also Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007) (affirming the *Southern Machine* test).

The plaintiff bears the burden of demonstrating that personal jurisdiction exists.  *Air Prods. and Controls, Inc.*, 503 F.3d at 549.  "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction."  *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citation omitted).  Further, when a district court

> rules on a jurisdictional motion to dismiss . . . without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff . . . .  To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction.  Furthermore, a court . . . does not weigh the controverting assertions of the party seeking dismissal.

*Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (citations omitted).  Dismissal is proper where the Plaintiff's factual allegations taken together fail to establish a *prima facie* case for personal jurisdiction.  *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

B. Legal Analysis

Even construing all allegations in favor of the Plaintiff, the Court finds that R.I.A. fails to establish a *prima facie* showing of specific jurisdiction over the Defendants in this case.

Under the first prong of the *Southern Machine* test, "the defendant must purposefully avail

himself of the privilege of acting in the forum state or causing a consequence in the forum state." *S. Mach. Co.*, 401 F.2d at 381. Purposeful availment is the "constitutional touchstone" of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the unilateral activity of another party or a third person." *Id.* at 475 (internal citations omitted). Rather, purposeful availment exists where the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State" such that he "'should reasonably anticipate being haled into court there.'" *Id.* at 474-75 (emphasis in original) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In the context of an alleged contractual relationship, courts should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining purposeful availment. *Burger King Corp.*, 471 U.S. at 479.

The Plaintiff alleges that the Defendants purposefully contacted Ohio in the following ways: 1) the parties entered into a loan commitment agreement ("the Commitment") that Plaintiff R.I.A. negotiated and executed in Ohio[3]; 2) the Defendants negotiated and communicated regarding the agreement via telephone, e-mail and U.S. mail directed to the Plaintiff and its various counsel in Ohio (and some of those communications are at issue in this lawsuit); 3) on multiple occasions, the Plaintiff transferred funds, totaling at least $45,000, from its Ohio bank accounts to the Defendants in Florida; and 4) Defendant Forman and his counsel attended the Plaintiff's Ohio bankruptcy hearing and were

---

[3] For the purposes of this analysis, the Court accepts that the loan commitment constitutes a contract because all facts are to be construed in the light most favorable to the Plaintiff. However, the Court peripherally notes Sixth Circuit precedent suggesting that the speculative nature of the alleged agreement might raise questions with regard to jurisdiction. *See Mkt./Media Research, Inc. v. Union Tribune Publ'g Co.*, 951 F.2d 102, 105 (6th Cir. 1991).

willing to testify as to the Defendants' Commitment to the Plaintiff.

Even construing these allegations in favor of the Plaintiff, the Court cannot find purposeful availment here.  A recent case summarized a 2000 Sixth Circuit decision that is closely analogous to the facts before this Court, *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000):

> Calphalon was an Ohio corporation. Rowlette was a Minnesota corporation and Calphalon's exclusive representative in Minnesota. Though Rowlette sent letters and faxes and made telephone calls to Ohio (and made three trips to Calphalon's facilities there for a tour and meetings), this court held that Ohio lacked personal jurisdiction over Rowlette . . . despite the existence of a contract. The court concluded that Rowlette's contacts with Ohio were too "fortuitous" or "attenuated" to support the exercise of jurisdiction because Rowlette's obligations under the agreement were to be performed outside of Ohio and because Rowlette was not seeking to exploit a market for Calphalon's products in Ohio. . . .  The court also noted that Rowlette's contacts with Ohio (by letter, telephone, fax and personal visits there) resulted not because Rowlette chose to create continuous and substantial consequences in Ohio, but because Calphalon chose to be headquartered there.

*Tharo Systems, Inc. v. Cab Produkttechnik GmbH & Co. KG*, 196 Fed.Appx. 366, 371 (6th Cir. 2006).  The Plaintiff here alleges contacts similar to those alleged in *Calphalon*: a contract, the Commitment, between the parties; various telephone, U.S. mail, and electronic mail communications from the Defendants to the Plaintiff in Ohio regarding that Commitment; and one visit by the Defendants to Ohio for the bankruptcy hearing.  Also similar, the Commitment here involves subject matter existing outside of the forum state, the Florida Shopping Center.  Based on the allegations before it, the Court finds that the Defendants were not attempting to exploit the market or cause a consequence in Ohio by entering into the Commitment with the Plaintiff.  See *Calphalon*, 228 F.3d at 723.  Moreover, the Defendants' contacts with Ohio were the result of the Plaintiff's choice of location; the Defendants likely would have done nothing differently had the Plaintiff chosen an alternative "base of operation."  See *id.*  Thus, under *Calphalon*, the Defendants' contacts are too

"random, fortuitous, and attenuated" to permit a finding of purposeful availment here.[4]

The Plaintiff's alleged contacts cannot overcome the *Calphalon* precedent.

The Court begins by analyzing the Defendants' alleged communications aimed at the Plaintiff in Ohio.  First, the Court notes the brief nature of the parties' relationship; these negotiations and communications only span a five-month (April - August 2006) period.  [Doc. 13-1 at 8, 12.][5]  Second, the Plaintiff does not dispute the Defendant's assertion that the Plaintiff initiated the relationship with the Defendants.  [Doc. 3-3 at 3.]  See *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007) ("[C]ontacts lack quality when they are initiated by the plaintiff rather than the defendant.").  With *Calphalon* in mind, the Court cannot find the Defendants' telephone, U.S. mail, and electronic mail communications directed to the Ohio Plaintiff sufficient to establish purposeful availment in this case.  See *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300-01 (6th Cir. 1989) (finding "no reason to suppose" that the defendants intended to lay themselves "open to liability in every state of the union whenever [they made] telephone calls or wrote letters to a customer who [might subsequently claim] that they constitute[d] misrepresentations.") (quotation omitted).

Next, the Court looks to the Plaintiff's allegations of contacts involving its wire transfers of funds to the Defendants from its Ohio banks.  In furtherance of the negotiations, the Plaintiff wired at least $45,000 in three separate transactions from its Ohio bank accounts to the Defendants' Florida bank accounts.  [Doc. 13-2 at 3-5, 20, 32, 34, 39, 42, 45, 55.]  The Court finds that these wire

---

[4] The Court also draws attention to an Ohio contact existing in *Calphalon* that does not exist in the instant case; in *Calphalon*, the contract included an Ohio choice of law provision that does not exist here.  See *Calphalon*, 228 F.3d at 723.

[5] The communications between the parties took place from either April through August 2006 or June through August 2006.  As referenced here, the Plaintiff says that the communications began in April in one part of its brief and June in another part.  Because the Court construes all allegations in favor of the Plaintiff at this stage, it will assume that the parties communicated about this transaction for the five-month period.

transfers represent the "unilateral activity" of Plaintiff R.I.A. that "is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).

Finally, and perhaps the Plaintiff's strongest alleged purposeful contact, Defendant Forman and his attorney attended the Plaintiff's bankruptcy hearing in the United States Bankruptcy Court for the Northern District of Ohio. [Doc. 13-2 at 4.] The general purpose of the hearing was to move the court to reimpose the stay of the bankruptcy proceedings to prevent the upcoming foreclosure sale of the Florida Shopping Center and to gain the court's approval of the loan agreement between the parties. [Doc. 1-3 at 33.] While Forman was allegedly prepared to testify that the loan was "going to close within a few days," neither Defendant Forman nor his attorney entered an appearance or spoke at the proceeding. [Docs. 13-2 at 4, 13-5 at 8-9, 3-2 at 8.] The Court also notes that the Plaintiff's payment for Forman's plane ticket suggests that he attended more for the Plaintiff's benefit than that of the Defendants. [Doc. 13-2 at 36.] Even construing all of the above allegations in favor of the Plaintiff, the Court does not find that this one visit from the Defendants to Ohio is sufficient to overcome the weakness of the other allegations under the *Calphalon* precedent.

The Plaintiff's general response to the above is that the Sixth Circuit has held, in a tortious communications case, that "when a foreign defendant purposefully directs communications into the forum that cause injury within the forum, and those communications form the 'heart' of the cause of action, personal jurisdiction may be present over that defendant without defendant's presence in the state." See *Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir. 2001). However, a 2005 Sixth Circuit case indicates that *Neal* is not as broad as the Plaintiff suggests. See *Rice v. Karsch*, 154 Fed.Appx. 454, 460-63 (6th Cir. 2005) (majority disagreeing with dissent's application of *Neal*). Thus, the Plaintiff

does not establish the Court's personal jurisdiction over the Defendants by merely alleging tortious communications aimed at the forum state.  With *Rice's* limitation of *Neal* in mind, the Court does not find that *Neal* overcomes the Court's finding of insufficient purposeful contacts under *Calphalon*.  Moreover, the Court finds that the Plaintiff's allegations sound more in contract, invoking *Calphalon*, than in tort, the basis for *Neal*.

Because the Plaintiff fails to establish a showing under the first, purposeful availment, prong of *Southern Machine*, the Court finds insufficient contacts to establish personal jurisdiction over the Defendants and need not address the second and third prongs of the test.  See *LAK, Inc.*, 885 F.2d at 1303 ("[E]ach criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked.").

### III. Venue Transfer

Because the Court lacks personal jurisdiction over the Defendants, it will not address the Defendants' alternative argument to transfer venue.

### IV.  Conclusion

For the reasons described above, the Court **GRANTS** the Defendants' motion to dismiss for lack of personal jurisdiction.  Because the Court finds that it lacks personal jurisdiction over the Defendants, the Court will not address the Defendants' alternative motion to transfer venue.

IT IS SO ORDERED.

Dated: June 6, 2008                               s/         *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE